David E. Bower (SBN 119546)
**MONTEVERDE & ASSOCIATES PC**
600 Corporate Pointe, Suite 1170
Culver City, CA 90230
Tel: (213) 446-6652
Fax: (212) 202-7880
dbower@monteverdelaw.com

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| DAVID NORMAND, Individually and on Behalf of All Others Similarly Situated,<br><br>              Plaintiff,<br><br>      v.<br><br>BOINGO WIRELESS, INC., MICHAEL FINLEY, LANCE E. ROSENZWEIG, MAURICE AUSTIN, ROY H. CHESTNUTT, MICHELE V. CHOKA, CHARLES DAVIS, DAVID HAGAN, TERRELL JONES, and KATHLEEN MISUNAS,<br><br>            Defendants. | Civil Action No. 21-cv-3626<br><br>**COMPLAINT**<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL**<br><br>1. **VIOLATIONS OF SECTION 14(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>2. **VIOLATIONS OF SECTION 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>3. **BREACHES OF FIDUCIARY DUTY** |

Plaintiff David Normand ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.     This action is brought as a class action by Plaintiff against Boingo Wireless, Inc. ("Boingo" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Boingo, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Merger") of Boingo by an affiliate of Digital Colony Management, LLC ("Digital Colony"). Plaintiff also asserts a claim against Defendants for breaching their fiduciary duty of candor/disclosure under state law.

2.     On February 26, 2021, Boingo entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which the Company's shareholders will receive $14.00 in exchange for each share of Boingo common stock they own (the "Merger Consideration").

3.     On April 28, 2021, in order to convince Boingo shareholders to vote in favor of the Proposed Merger, Defendants authorized the filing of a materially incomplete and misleading definitive proxy statement (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act and in breach of the Defendants' duty of candor/disclosure.

4.     In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for Boingo; (ii) the valuation

CLASS ACTION COMPLAINT

analyses performed by Boingo's financial advisor, TAP Advisors, LLC ("TAP Advisors"), in support of its fairness opinion; and (iii) the background of the Proposed Merger.

5. The special meeting of Boingo shareholders to vote on the Proposed Merger (the "Shareholder Vote") is currently scheduled for June 1, 2021. It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the Shareholder Vote so Plaintiff can cast an informed vote and properly exercise his corporate suffrage rights.

6. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and breach of the duty of candor/disclosure. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Merger until the material information discussed herein is disclosed to Boingo shareholders sufficiently in advance of the Shareholder Vote or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act and breach of the duty of candor/disclosure.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8. The Court has supplemental jurisdiction over the state law claim for breach of the duty of candor/disclosure pursuant to 28 U.S.C. § 1367.

9. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of

CLASS ACTION COMPLAINT

jurisdiction over the Defendants by this Court permissible under traditional notions of fair play and substantial justice.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as pursuant to 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Boingo maintains its principal place of business in this District and each of the Individual Defendants, Company officers and/or directors, either resides in this District or has extensive contacts within this District; (iii) a substantial portion of the transactions and wrongs complained of herein occurred in this District; (iv) most of the relevant documents pertaining to Plaintiff's claims are stored (electronically and otherwise), and evidence exists, in this District; and (v) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## CLASS ACTION ALLEGATIONS

11.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of Boingo (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

12.     This action is properly maintainable as a class action because:

a.     The Class is so numerous that joinder of all members is impracticable. As of April 28, 2021, the record date for the Proposed Merger, there were 44,751,010 shares of Boingo common stock outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country. The actual number of public stockholders of Boingo will be ascertained through discovery;

CLASS ACTION COMPLAINT

b.      There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i)      whether Defendants misrepresented or omitted material information concerning the Proposed Transaction in the Proxy, in violation of Sections14(a) of the Exchange Act;

ii)     whether the Individual Defendants violated Section 20(a) of the Exchange Act; and

iii)    whether the Defendants breached their fiduciary duties of candor/disclosure under Delaware law;

iv)     whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote on the Proposed Merger based on the materially incomplete and misleading Proxy;

c.      Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.      Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.      Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.      A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## **PARTIES**

13.     Plaintiff is, and at all relevant times has been, a shareholder of Boingo.

14.     Defendant Boingo provides wireless internet connectivity solutions for consumer devices. The Company maintains its principal executive offices at 10960 Wilshire Blvd, 23rd Floor, Los Angeles, CA 90024, is incorporated in Delaware, and lists and trades its common stock on the Nasdaq under the ticker symbol "WIFI".

15.     Individual Defendant Michael Finley is, and has been at all relevant times, the Chief Executive Officer and a director of Boingo.

16.     Individual Defendant Lance E. Rosenzweig is, and has been at all relevant times, the Chairman of the Boingo Board.

17.     Individual Defendant Maurice Austin is, and has been at all relevant times, a director of Boingo.

18.     Individual Defendant, Roy H. Chestnutt is, and has been at all relevant times, a director of Boingo.

19.     Individual Defendant Michele V. Choka is, and has been at all relevant times, a director of Boingo.

20.     Individual Defendant Charles Davis is, and has been at all relevant times, a director of Boingo.

21.     Individual Defendant David Hagan is, and has been at all relevant times, a director of Boingo.

22.     Individual Defendant Terrell Jones is, and has been at all relevant times, a director of Boingo.

23.     Individual Defendant Kathleen Misunas is, and has been at all relevant times, a director of Boingo.

CLASS ACTION COMPLAINT

24.     The Individual Defendants referred to in ¶¶ 13-23 are collectively referred to herein as the "Individual Defendants" and/or the "Board", and together with Boingo they are referred to herein as the "Defendants".

## SUBSTANTIVE ALLEGATIONS

**I.     Background and the Proposed Transaction**

25.     Boingo is a provider of neutral host commercial mobile Wi-Fi Internet solutions and indoor direct-attached storage services. The Company provides wireless connectivity solutions for smartphones, tablets, laptops, wearables and other wireless-enabled consumer devices. It acquires long-term wireless rights at venues, such as airports, transportation hubs, stadiums, arenas, military bases, universities, convention centers, and office campuses; builds wireless networks, such as DAS, towers, fifth generation (5G), small cells, Citizens Broadband Radio Service, and Wi-Fi at those venues; and it monetizes the wireless networks through a number of products and services.

26.     Digital Colony is a digital infrastructure investment firm with over US$30 billion in assets under management. Digital Colony was launched in 2017 by Digital Bridge and Colony Capital (NYSE: CLNY). Digital Colony invests in mobile and internet infrastructure. The firm has offices in Los Angeles, Boca Raton, New York, London, and Singapore, and has over 90 investment and operating professionals.

27.     On March 1, 2021, Boingo issued a press release announcing the Proposed Merger, which states in relevant part:

**Boingo Wireless to be Acquired by Digital Colony**

*Boingo Shareholders to Receive $14.00 per share in Cash TransactionValued at Approximately $854 Million*

*Leading Digital Infrastructure Investment Firm, Digital Colony, Uniquely Positioned to Continue Investing in Boingo's Diverse Network*

CLASS ACTION COMPLAINT

*Boingo to Become a Privately Held Company Upon Completion of Transaction*

**LOS ANGELES – March 1, 2021** – Boingo Wireless, Inc. ("Boingo" or "the Company") (NASDAQ: WIFI), the leading distributed antenna system ("DAS") and Wi-Fi provider that serves carriers, consumers, property owners and advertisers worldwide, announced today that it has entered into a definitive agreement and plan of merger to be acquired by an affiliate of Digital Colony Management, LLC ("Digital Colony"). Upon completion of the transaction, Boingo will transition from a public company to a privately held company.

Under the terms of the agreement, which has been unanimously approved by Boingo's Board of Directors, Digital Colony will acquire all the outstanding shares of Boingo common stock for $14.00 per share in cash through a merger, in a transaction valued at approximately $854 million, including the assumption of $199 million of Boingo's net debt obligations. The acquisition price represents a 23% premium to Boingo's closing price of $11.40 on February 26, 2021.

"We are pleased to have reached this agreement with Digital Colony, which will deliver significant and immediate value to Boingo's stockholders and concludes a robust strategic review process undertaken by Boingo over the past year," said Mike Finley, Chief Executive Officer of Boingo Wireless. "We believe Digital Colony's expertise owning and operating digital infrastructure businesses, combined with its relationships, resources and access to long-term, private capital markets, will provide greater flexibility for Boingo to continue advancing its business strategy."

Warren Roll, Managing Director of Digital Colony, added, "Boingo is a leader in indoor wireless infrastructure, operating networks that serve a large and growing addressable market. We look forward to working with the experienced Boingo team as they continue to develop and deploy reliable networks serving their diverse set of high-quality customers."

The transaction, which is subject to the receipt of Boingo shareholder approval, regulatory approvals and other customary closing conditions, is expected to close in the second quarter of 2021.

TAP Advisors is serving as exclusive financial advisor and provided a fairness opinion to Boingo's Board of Directors in connection with the transaction and Gunderson Dettmer is serving as legal counsel. Credit Suisse is acting as lead financial advisor and Truist Securities Inc. is acting as co-financial advisor to Digital Colony in connection with the transaction. Debt financing for the transaction is being led by Truist Securities Inc. along with Joint Lead Arrangers and Joint Bookrunners TD Securities and CIT. Simpson Thacher is serving as legal advisor to Digital Colony.

For further information regarding all terms and conditions contained in the definitive agreement, please see the Form 8-K the Company will file with the SEC in connection with this transaction.

**Full Year 2020 Financial Results**

In connection with the proposed transaction, Boingo has canceled its conference call to discuss the Company's full year 2020 results, previously scheduled for March 1, 2021 at 4:30 PM Eastern Time. The Company expects to file its Annual Report on Form 10-K for the year ended December 31, 2020 on March 1, 2021.

28.     The Merger Consideration represents inadequate compensation for Boingo shares. Prior to the announcement of the Proposed Merger, the Company was fresh off back-to-back quarters of announcing positive financial results, beating EPS guidance. This caused multiple wall street analysts to raise their price targets to or above $22—in fact, all price targets for the Company were between $15-23— well in excess of the $14 Merger Consideration. Moreover, the Merger Consideration represents a 12% *discount* to the Company's 52-week high trading price of $15.92 and a 9% *discount* to 90-day high trading price of $15.41. It is therefore imperative that shareholders receive the material information (discussed in detail below) that Defendants have omitted from the Proxy, which is necessary for shareholders to properly exercise their corporate suffrage rights and cast an informed vote on the Proposed Merger.

## II.     The Materially Incomplete and Misleading Proxy

29.     On April 28, 2021, Defendants filed the materially incomplete and misleading Proxy with the SEC.  The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision in connection with the Proposed Merger.

The Misleadingly Incomplete Financial Projections

30.     First, the Proxy omits critical financial projections, including the net income/loss projections for Boingo (the "Net Income Projections"). The Defendants elected to summarize the Company's financial projections, but they excised and

failed to disclose the Net Income Projections. The Net Income projections existed and were readily available to be disclosed. Indeed, they were necessary and utilized to calculate the disclosed EBITDA projections. By disclosing certain projections in the Proxy and withholding the Net Income Projections, Defendants render the tables of projections on page 66 of the Proxy materially incomplete and provide a misleading valuation picture of Boingo. Simply put, net income projections are irreplaceable when it comes to fully and fairly understanding a company's projections and value.

31.     Second, the Proxy states that TAP Advisors utilized both consolidated and business segment financial projections in performing multiple financial analyses in support of their fairness opinion. However, the Proxy only discloses the consolidated financial projections and omits the financial projections broken down by distributed antenna systems segment, Military segment, and all other segments (the "Business Segment Projections"). Clearly, the expert financial advisor deemed it most appropriate to value the Company not only as a whole but also by business segment. Moreover, during the sales process parties inquired about the possibility of purchasing particular business segments of the Company. Accordingly, the failure to disclose the readily available Business Segment Projections renders the summary of the valuation analyses using these projections and the summary of the financial projections included in the Proxy misleadingly incomplete.

32.     Third, the Proxy indicates that the Company adjusted its financial projections multiple times, but only discloses the "final" "Fairness Financials." Defendants withheld and the Proxy omits the (i) original financial projections; (ii) the preliminary updated financial projections; (iii) the updated financial projections provided to Digital Colony; and (iv) any description of the adjustments made or any explanation as to why the financial projections were adjusted. Instead, the Proxy only discloses the final Fairness Financials prepared after the Merger Consideration

was agreed upon and provided solely to TAP Advisors for the purpose of performing their valuation analyses to support their fairness opinion.

33.     Moreover, in listing the "material" factors the Board considered and relied upon, in making its recommendation that shareholders vote in favor of the Proposed Merger, the Proxy states that the Board relied upon "no[n] risk-adjusted" projections. Proxy at 53. This statement is in direct contradiction to the description provided of the final Fairness Financials: "Boingo approved the use of the risk-adjusted financial projections by TAP Advisors in performing its financial analyses." Proxy at 64. This indicates that the financial projections showed to the Company's shareholders and utilized for the valuation analyses were, in fact, lower in value than the financial projections relied upon by the Board. Shareholders are entitled to know how and why these financial projections were changed and whether TAP Advisors performed any valuation analyzes utilizing any of the earlier sets of projections.

34.     Unlike poker where a player must conceal his unexposed cards, the object of a proxy statement is to put all one's cards on the table face-up. In this case only some of the cards were exposed—the others were concealed. If a proxy statement discloses financial projections and valuation information, such projections must be complete and accurate.  The question here is not the duty to speak, but liability for not having spoken enough.  With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. Accordingly, Defendants have disclosed some of the projections relied upon by TAP Advisors and the Board but have omitted the Net Income Projections, the Business Segment Projections, and the earlier sets of projections. These omissions render the summary of the projection tables and the Company's inherent value in the Proxy misleadingly incomplete.

<u>The Misleadingly Incomplete Summary of TAP Advisors' Fairness Opinion</u>

35.     The Proxy describes TAP Advisors' fairness opinion and the various valuation analyses performed in support of their opinion.  Defendants concede the materiality of this information in citing TAP Advisors' fairness opinion and their valuation analyses among the "material" factors the Board considered in making its recommendation to Boingo shareholders. Proxy at 52; *see also* Proxy at 59 ("The following is a summary of the material financial analyses performed by TAP Advisors and presented to the Boingo Board in connection with TAP Advisors' rendering of its opinion."). However, the summary of TAP Advisors' fairness opinion and analyses provided in the Proxy fails to include key inputs and assumptions underlying the analyses. Without this information, as described below, Boingo shareholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on TAP Advisors' fairness opinion in determining how to vote on the Proposed Merger. *See* Proxy at 59 ("TAP Advisors further believes that selecting portions of the analyses and factors or focusing on information presented in tabular format, without considering all analyses and factors or the narrative description of the analyses and factors, could create a misleading or incomplete view of the processes underlying TAP Advisors' analyses and opinion."). This omitted information, if disclosed, would significantly alter the total mix of information available to Boingo shareholders.

36.     First, in summarizing the *Discounted Cash Flow Analysis* prepared by TAP Advisors, the Proxy fails to disclose the following key information used in the analyses: (i) the actual unlevered free cash flows used in the analysis including both the consolidated unlevered free cash flows and each business segments unlevered free cash flows; (ii) the inputs and assumptions underlying each discount rate range (including the values of the company-specific WACC/CAPM components); and (iii) the actual terminal values calculated for the analysis.

37.     These key inputs are material to Boingo shareholders, and their omission renders the summary of the *Discounted Cash Flow Analysis* incomplete and misleading. As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…" Id.   As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

Id. at 1577-78.

38.     Without the above-omitted information, especially the unlevered free cash flows, Boingo shareholders are misled as to the reasonableness or reliability of TAP Advisors' analysis, and unable to properly assess the fairness of the Proposed Merger.  As such, these material omissions render the summary of the *Discounted Cash Flow Analysis* included in the Proxy misleadingly incomplete.

39.     Second, in summarizing TAP Advisors' *Premiums Paid in Selected Merger and Acquisition Transactions* analysis, the Proxy fails to disclose the identity of any of the transactions or the individual premiums observed. As such,

shareholders are unable to assess whether the banker applied appropriate transactions and premiums, or, instead, applied unreasonably low transactions and premiums in order to present the Merger Consideration in the most favorable light. Indeed, TAP Advisors appears to have focused on real estate investment trust (REIT) transactions, which—according to their undisclosed observations—resulted in lower premiums and misleadingly diluted the value of the overall premiums observed. Moreover, the summary fails to provide any reason why TAP Advisors focused on REIT transactions at all given that Boingo is a wireless technology provider whose business differs drastically from a REIT. Accordingly, the omission of this material information renders the summary of the premiums analysis provided in the Proxy misleading.

40.     Third, and similarly, in summarizing the *Boingo Wall Street Equity Research Analyst Stock Price Targets* observed by TAP Advisors, the Proxy only provides a range instead of providing the individual price targets observed. Given the difference between the price targets and derisory Merger Consideration, it is possible that the Proxy disclosed only the range to minimize this discrepancy. All price targets should be disclosed so that shareholders can judge for themselves.

<u>The Misleadingly Incomplete Background of the Proposed Merger</u>

41.     The Proxy contains a misleadingly incomplete summary of the events leading up to the Proposed Merger that omits material facts. Once a company travels down the road of partial disclosure of the history leading up to a merger, they had an obligation to provide shareholders with an accurate, full, and fair characterization of those historic events. Even a non-material fact can trigger an obligation to disclose additional, otherwise non-material facts in order to prevent the initial disclosure from materially misleading the stockholders.

42.     Frist, the Proxy states that during the sales process the Company entered into non-disclosure agreements with numerous parties, but fails to disclose

whether these NDAs contained standstill provisions and/or "don't ask don't waive" ("DADW") provisions, including whether those provisions had fallen away upon the execution of the Merger Agreement or were still in effect.

43.    The express communication of the existence of these provisions is material to Boingo shareholders, as it bears directly on the ability of parties that expressed interest in acquiring the Company to offer them a better deal.  The failure to plainly disclose the existence of DADW provisions creates the false impression that any of the parties who signed non-disclosure agreements could have made a superior proposal. However, if those non-disclosure agreements contained DADW provisions, then those parties could only make a superior proposal by breaching the agreement—since in order to make the superior proposal, they would have to ask for a waiver, either directly or indirectly. Thus, the omission of this material information renders the summary provided in the Background of the Merger section of the Proxy misleading.  Any reasonable shareholder would deem the fact that the most likely potential topping bidders in the marketplace may be precluded from making a superior offer to significantly alter the total mix of information.

44.    Second, the Proxy indicates that Boingo's executive officers will continue to manage the company following the consummation of the Proposed Merger. However, the Proxy fails to fully disclose (i) the timing and nature of any and all discussions or negotiations regarding post-close employment; or (ii) the compensation and benefits the officers will receive or expect to receive, including whether they will maintain any equity interest in the post-merger company—an option foreclosed by the Proposed Merger to Boingo's common shareholders. This information is critical to shareholders so they may analyze the potential conflicts of interest between themselves and those in charge of negotiating the Proposed Merger. As such, this information is material and must be disclosed.

CLASS ACTION COMPLAINT

45.     In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act and the Defendants' duty of candor/disclosure.  Absent disclosure of the foregoing material information prior to the forthcoming Shareholder Vote, Plaintiff will be unable to cast an informed vote regarding the Proposed Merger, and is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**COUNT I**

**Claims Against Defendants for Violations of Section 14(a) of the Exchange Act**

46.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

48.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

49.     The omission of information from a proxy will violate Section 14(a) if other SEC regulations specifically require disclosure of the omitted information.

CLASS ACTION COMPLAINT

50.     Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Merger.  Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) the financial projections; (ii) the valuation analyses performed by TAP Advisors; and (iii) the background of the Proposed Merger.

51.     In so doing, Defendants made misleading statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

52.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger; indeed, the Proxy states that TAP Advisors reviewed and discussed their financial analyses with the Board, and further states that the Board considered the financial analyses provided by TAP Advisors, as well as their fairness opinion and the assumptions made and matters considered in connection therewith.  Further, the Individual Defendants were privy to and had knowledge of the financial projections and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information

CLASS ACTION COMPLAINT

identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review TAP Advisors' analyses in connection with their receipt of the fairness opinion, question TAP Advisors as to their derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

53.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

54.     Boingo is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

55.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote on the Proposed Merger if such misrepresentations and omissions are not corrected prior to the special meeting of Boingo shareholders. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

//

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the
Exchange Act**

56.     Plaintiff incorporates each and every allegation set forth above as if
fully set forth herein.

57.     The Individual Defendants acted as controlling persons of Boingo
within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue
of their positions as officers and/or directors of the Company, and participation in
and/or awareness of the Company's operations and/or intimate knowledge of the
incomplete and misleading statements contained in the Proxy filed with the SEC,
they had the power to influence and control and did influence and control, directly
or indirectly, the decision making of the Company, including the content and
dissemination of the various statements that Plaintiff contends are materially
incomplete and misleading.

58.     Each of the Individual Defendants was provided with or had unlimited
access to copies of the Proxy and other statements alleged by Plaintiff to be
misleading prior to and/or shortly after these statements were issued and had the
ability to prevent the issuance of the statements or cause the statements to be
corrected.

59.     In particular, each of the Individual Defendants had direct and
supervisory involvement in the day-to-day operations of the Company, and,
therefore, is presumed to have had the power to control or influence the particular
transactions giving rise to the Exchange Act violations alleged herein, and exercised
the same. The Proxy contains the unanimous recommendation of each of the
Individual Defendants to approve the Proposed Merger.  They were thus directly
involved in preparing this document.

60.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.   The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

61.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

62.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.   As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

63.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **COUNT III**

### **Against the Defendants for Breach of Their Fiduciary Duty of Disclosure**

64.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

65.     By virtue of their role as directors and/or officers of the Company, the Individual Defendants directly owed Plaintiff and all Company shareholders a fiduciary duty of candor/disclosure, which required them to disclose fully and fairly all material information within their control when they seek shareholder action, and to ensure that the Proxy did not omit any material information or contain any materially misleading statements.

66.     As alleged herein, the Defendants breached their duty of candor/disclosure by approving or causing the materially deficient Proxy to be disseminated to Plaintiff and the Company's other public shareholders.

67.     The misrepresentations and omissions in the Proxy are material, and Plaintiff will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Where a shareholder has been denied one of the most critical rights he or she possesses—the right to a fully informed vote—the harm suffered is an individual and irreparable harm.

68.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff demands relief in his favor and against the Defendants jointly and severally, as follows:

A.     Declaring this action to be a proper class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and certifying Plaintiff as Class Representatives and their counsel as Class Counsel;

B.     Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the special meeting of Boingo shareholders to vote on the Proposed Merger or consummating the Proposed Merger, until the Company discloses the material information discussed above which has been omitted from the Proxy;

C.     Directing the Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

D.     Awarding Plaintiff and the Class the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

CLASS ACTION COMPLAINT

E.     Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

DATED:  April 28, 2021              Respectfully submitted,

**OF COUNSEL**                      David E. Bower

**MONTEVERDE & ASSOCIATES          David E. Bower SBN 119546
PC**                               **MONTEVERDE & ASSOCIATES
Juan E. Monteverde                  PC**
John W. Baylet                     600 Corporate Pointe, Suite 1170
The Empire State Building          Culver City, CA 90230
350 Fifth Avenue, Suite 4405       Tel: (213) 446-6652
New York, New York 10118           Fax: (212) 202-7880
Tel:  212-971-1341                 dbower@monteverdelaw.com
Fax:  212-202-7880
jmonteverde@monteverdelaw.com      *Counsel for Plaintiff*

*Counsel for Plaintiff*

CLASS ACTION COMPLAINT